## BRADY *v.* STATE

[No. 135, September Term, 1961.]

*Decided October 11, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT, HORNEY and MARBURY, JJ.

*E. Clinton Bamberger, Jr.,* with whom was *George B. Woel-fel* on the brief, for the appellant.

*Thomas W. Jamison, III, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *C. Osborne Duvall, State's Attorney for Anne Arundel County,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

On this appeal from a denial of post conviction relief, the appellant, Brady, contends that he was deprived of a fair trial by reason of the fact that the State did not disclose at or before the trial that it then had in its possession a statement of his accomplice Boblit admitting that he, Boblit, had actually strangled the victim.

Boblit and Brady were each convicted of first degree murder in separate trials. Brady elected a jury trial and was tried first; Boblit elected a court trial. Each appealed from his conviction and the cases were argued together in this Court, and each of the convictions was affirmed on appeal, *sub nom. Boblit v. State,* 220 Md. 454, 154 A. 2d 434. It was conceded that Boblit conspired with Brady to rob the victim, Brooks, but each claimed that the other had actually strangled Brooks and that the killing was separate and distinct from the robbery. We held otherwise, pointing out that the robbery was not complete at the time Brooks was killed, although Boblit contended on appeal that he did not actively assist Brady in strangling the victim. The sole contention raised on behalf of Brady related to the voluntariness of his confession, in which he admitted participation but denied killing Brooks, although, as pointed out in the opinion, he took the stand and admitted virtually everything set forth in his confession. On this appeal, Brady concedes that "[a]t his trial the appellant [Brady] admitted participation in the robbery in the course of which the homicide occurred." As we held on the original appeals of Boblit and Brady, the killing was clearly in perpe-

tration of the robbery and hence covered by the statute, Code (1957), Art. 27, Sec. 410, which defines such a killing as murder in the first degree.

Brady subsequently filed a motion to set aside the judgment and sentence on the ground that an unsigned statement given to the police by Boblit, of which he claims he had no knowledge until after the affirmance on his appeal, although it was produced at the trial of Boblit, would have corroborated his testimony that Boblit did the actual killing. We dismissed his appeal from the denial of that motion on the ground that his only relief was under the Post Conviction Act, Code (1960 Supp.), Art. 27, Sec. 645A, *et seq.* *Brady v. State,* 222 Md. 442, 160 A. 2d 912.

Brady then applied for post conviction relief, and his application was denied after a full hearing, his application being on substantially the same grounds. The trial court filed an elaborate opinion holding that there had been no denial of a constitutional right. We granted leave to appeal.

At the trial of Boblit the State offered the unsigned statement of Boblit in which he admitted strangling the victim. The court excluded it because it was unsigned.[1] In several prior statements Boblit had stated that Brady did the killing and so testified on the stand. These statements were made available to Brady's counsel before trial, but the one in which Boblit said that he had done the actual killing was not so made available. At the trial of Brady the unsigned statement of Boblit was not produced by the State nor offered in evidence. This trial, as noted, took place before the trial of Boblit. The State knew in advance of Brady's trial that Brady's chief reliance was upon the hope that the jury might find him guilty of first degree murder without capital punishment if it believed his testimony that Boblit did the killing. The importance of this consideration was stressed in the case of *Day v. State,* 196 Md. 384, 391, 76 A. 2d 729. See also *United States ex rel. Almeida v. Baldi,* 195 F. 2d 815 (3d Cir.), cert. den., 345 U. S. 904; rehearing den., 345 U. S.

---

1. See *Hall v. State,* 223 Md. 158, 162 A. 2d 751, decided after the trial of Boblit's case and reaching an opposite result.

946; *United States ex rel. Thompson v. Dye,* 221 F. 2d 763 (3d. Cir.), cert. den. 350 U. S. 875.

We think that there was a duty on the State to produce the confession of Boblit that he did the actual strangling or at least to inform counsel for the accused of its existence. The suppression or withholding by the State of material evidence exculpatory to an accused is a violation of due process. See *People v. Fisher,* 192 N. Y. S. 2d 741, 746 (Ct. Gen. Sess. N. Y. Co.); *United States ex rel. Almeida v. Baldi, supra; United States ex rel. Thompson v. Dye, supra; Griffin v. United States,* 87 U. S. App. D. C. 172, 183 F. 2d 990. For cases involving the related problem of the prosecution's failing to correct testimony known to be untrue, and holding such failure and the use of such testimony to amount to a denial of due process, see *Alcorta v. Texas,* 355 U. S. 28; *Napue v. Illinois,* 360 U. S. 264; *People v. Savvides,* 1 N. Y. 2d 554, 136 N. E. 2d 853 (non-disclosure and failure to correct untrue testimony as denying a fair trial). It is nonetheless a denial of due process if the withholding of material evidence is without guile (*Griffin v. United States; People v. Savvides;* both just cited) but it seems fair to add, that the appellant here does not contend that failure to produce Boblit's statement in issue was the result of guile.

The State contends that Boblit's confession of the actual strangling would not have been admissible at Brady's trial and hence that its being withheld could not have prejudiced Brady's case. It is true that as a general rule an extrajudicial confession or admission by a third party that he committed the offense for which the defendant is on trial is not admissible. *Munshower v. State,* 55 Md. 11; *Baehr v. State,* 136 Md. 128, 110 A. 103; and this has been recognized in *Brennan v. State,* 151 Md. 265, 134 A. 148, and in *Thomas v. State,* 186 Md. 446, 47 A. 2d 43. This general rule, which is the majority rule in this country as well as the rule in England, has been severely criticized, notably in Mr. Justice Holmes' brief and pointed dissent in *Donnelly v. United States,* 228 U. S. 243, at 277-278, and in 5 Wigmore, *Evidence* (3rd ed.) §§ 1476, 1477, and McCormick, *Evidence,* § 255. The A. L. I. *Model Code of Evidence,* § 509, rejects it.

Both the *Brennan* and the *Thomas* cases recognized that the rule is not without exception and have limited its operation. It has also been at least limited, so as not to be an absolute rule, in some other jurisdictions. *Hines v. Commonwealth,* 136 Va. 728, 117 S. E. 843; *Newberry v. Commonwealth,* 191 Va. 445, 460-462, 61 S. E. 2d 318, 325-326 (co-defendant's confession exculpating defendant); *Sutter v. Easterly,* 354 Mo. 282, 189 S. W. 2d 284; *Osborne v. Purdome,* 250 S. W. 2d 159 (Mo.), (following the *Sutter* case after an intervening case in which *Sutter* had not been applied, *State v. Gordon,* 356 Mo. 1010, 204 S. W. 2d 713); *People v. Lettrich,* 413 Ill. 172, 108 N. E. 2d 488; *Cameron v. State,* 153 Tex. Cr. Rep. 29, 217 S. W. 2d 23. Some cases emphasize the unavailability of the declarant as a witness, and in *Newberry v. Commonwealth, supra,* his refusal to testify was held to amount to unavailability.

In *Thomas v. State, supra,* 186 Md. at 452, Judge Delaplaine, speaking for the Court said: "[W]e hold that where a witness has made a written confession that he committed the crime with which the defendant is charged, the defendant should be allowed to introduce the confession in evidence and question him in regard to the confession and the circumstances under which he made it. We further hold that where in a criminal case an officer has secured contradictory confessions from two different persons, the defense should be permitted to question him about both confessions and we further hold that such a confession by a third party is admissible unless it appears that there was some collusion in obtaining it."

The reasons for the adoption of the general rule and also for the development of exceptions to it or limitations upon it all rest in large measure upon concern for the trustworthiness of the declaration against interest proposed to be offered; and certainly this weighs heavily in the criticisms of the general rule. See the passages in Wigmore and McCormick above referred to, Mr. Justice Holmes' dissent in *Donnelly v. United States, supra; People v. Lettrich, supra,* 108 N. E. 2d at 491-492; and the *Brennan* and *Thomas* cases in this Court. Certainly since the decisions of those cases, the rule

of the *Munshower* case cannot be said to be of universal application. We think that Boblit's undisclosed confession might have been usable under any of the three rules stated in *Thomas,* which we have quoted above, and hence could not be regarded as inadmissible and unusable in any manner in Brady's defense.

Brady might have called Boblit as a witness. If he had testified, the first holding of *Thomas* would have permitted his cross-examination about that confession. The only difference then would have been that this confession of Boblit's was unsigned and hence not strictly a written confession; but under *Hall v. State,* 223 Md. 158, 162 A. 2d 751, that difference would not seem controlling. If, as might well have been the case, Boblit had stood on his privilege and refused to testify, Brady might then have interrogated the police officers who had taken Boblit's statement; and it seems that there was no collusion as between Boblit and Brady with regard to this confession. Their interests were opposed to the extent that the question of which one did the actual strangling was material, their interrogations were separate and it appears that they had been kept apart. No reason or inducement for Boblit to take this blame for Brady is apparent. To what extent a confession or admission of a third party is free of collusion and bears the indicia of trustworthiness is a question which we think should be entrusted in the first instance to the sound discretion of the trial judge. Certainly, the "confession" of a crackpot, anonymous or otherwise (and such "confessions" are not uncommon in cases of wide notoriety), would not bear any hallmark of trustworthiness, and would not call for the application of the second or third rules of the *Thomas* case.

There is considerable doubt as to how much good Boblit's undisclosed confession would have done Brady if it had been before the jury. It clearly implicated Brady as being the one who wanted to strangle the victim, Brooks. Boblit, according to this statement, also favored killing him, but he wanted to do it by shooting. We cannot put ourselves in the place of the jury and assume what their views would have been as to whether it did or did not matter whether it was

Brady's hands or Boblit's hands that twisted the shirt about the victim's neck. To apply the words of the Supreme Court of the United States in *Griffin v. United States,* 336 U. S. 704 at 708-709, quoted by the Court of Appeals of the District of Columbia Circuit in its opinion on remand of the case, above cited (183 F. 2d at 992), it seems to us (as it did to the Court of Appeals of the District in *Griffin*) that it would be "too dogmatic" for us to say that the jury would not have attached any significance to this evidence in considering the punishment of the defendant Brady.

Not without some doubt, we conclude that the withholding of this particular confession of Boblit's was prejudicial to the defendant Brady. Having arrived at the conclusions that it was prejudicial and that he was deprived of a constitutional right, we turn to the question of appropriate relief under the Uniform Post Conviction Procedure Act (Code (1960 Cum. Supp.), Art. 27, Secs. 645A-645J). The section dealing with the kind of relief to be granted is Sec. 645G, which reads in part as follows: "If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings, and any supplementary orders as to * * * retrial, * * * correction of sentence, or other matters that may be necessary and proper." Our own Rule 870 (of the Maryland Rules) provides that this Court will (with exceptions not here pertinent) affirm or reverse the judgment appealed from, or direct the manner in which it shall be modified, changed or amended.

The appellant's sole claim of prejudice goes to the punishment imposed. If Boblit's withheld confession had been before the jury, nothing in it could have reduced the appellant Brady's offense below murder in the first degree. We, therefore, see no occasion to retry that issue. Brady is entitled to have a jury empaneled to determine whether the finding already made of guilty of murder in the first degree should or should not be modified by the addition of the words "without capital punishment"; and to that end any admissible evidence bearing on that question should be submitted to the jury which either the State or the defendant may deem it appropriate to present. This may require to a large extent a dupli-

cation of the evidence submitted at the first trial, and it will permit the defendant to make such use of the withheld Boblit confession as he may desire and as may be appropriate under our decision in this case. We do not now undertake to pass upon any question of privilege, should Boblit be called as a witness and should he assert any claim of privilege against testifying. Should the jury decline to add the words "without capital punishment", sentence will be for the determination of the court on the basis of the evidence produced on the rehearing. If the jury should add those words, life imprisonment is mandatory under Code (1957), Art. 27, Sec. 413.

In accordance with the above views the judgment appealed from is reversed and the case is remanded with instructions to enter an order, not inconsistent with this opinion, for a new trial on the question of punishment only.

> *Judgment reversed and case remanded for the entry of an order not inconsistent with this opinion for a new trial on the question of punishment only.*